UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IVAN KOVALEV and MINTIWAB HILL, *on behalf of themselves and all others similarly situated*,

                         Plaintiffs,

                -against-

A.G. CONSULTING ENGINEERING, P.C.,

                         Defendant.

---

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED:___8/25/2025___ |

22-cv-5954 (MKV)

<u>OPINION & ORDER DENYING
MOTION TO CERTIFY CLASS
AND APPROVE SETTLEMENT</u>

**MARY KAY VYSKOCIL, United States District Judge:**

Plaintiffs Ivan Kovalev and Mintiwab Hill, purporting to assert claims on behalf of themselves and all others similarly situated, filed a putative collective and class action lawsuit against their former employer, Defendant A.G. Consulting Engineering, P.C. ("AGC") [ECF No. 5 ("Compl.")].  AGC is an engineering firm that provides an "array of Mechanical/HVAC, Electrical, Plumbing ('MEP') services, Fire Protection, Fire Engineering, LEED Consulting, Construction Management and Special Inspection Services for federal, state, and city agencies and for the private sector."  Compl. ¶ 2.  Kovalev inspected electrical work performed by contractors for the New York City Metropolitan Transportation Authority ("MTA") [ECF No. 59-3 ("Kovalev Decl.") ¶¶ 2, 7]. *See* Compl. ¶¶ 16, 40, 41, 43, 44, 48.  Hill inspected "various mechanical, electrical and plumbing ('MEP') repair and maintenance jobs" for the New York Department of Corrections Office of General Services, among other responsibilities [ECF No. 59-5 ("Hill Decl.") ¶¶ 7, 10]. *See* Compl. ¶¶ 17, 56, 57, 59, 64, 65.  Plaintiffs assert claims for violations of the Fair Labor Standards Act ("FLSA"), as a collective pursuant to 29 U.S.C. § 216(b), and the New York Labor Law ("NYLL"), as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Compl.

¶¶ 90–101, 108–117.  Plaintiff Kovalev also individually asserts claims for retaliation under the FLSA and NYLL.  *Id.* ¶¶ 102–107, 118–123.

Earlier in this case, after Plaintiffs filed a motion for conditional certification of a FLSA collective action [ECF Nos. 25–27], and before the Court ruled on that motion, the parties reached a settlement in principle with the assistance of a mediator [ECF No. 31; *see* ECF No. 32].  Plaintiffs thereafter filed an unopposed motion for Rule 23 class certification and approval of the parties' proposed settlement [ECF Nos. 44–47].  The Court denied those motions without prejudice, citing "serious doubts" that Plaintiffs could "meet the requirements" for conditional certification of a FLSA collective action, much less a Rule 23 class action [ECF Nos. 48, 54, 55 ("Tr.") at 10:7–10].  The Court thereafter granted Plaintiffs' renewed, unopposed motion for conditional certification, stressing the "modest" showing required to issue notices to potential plaintiffs to determine whether there "*may* be [others] similarly situated to Plaintiffs with respect to whether a violation of the FLSA has occurred" [ECF No 62 (emphasis added)].

Now before the Court is Plaintiffs' renewed, unopposed motion for class certification and settlement approval [ECF Nos. 71, 72 ("Pl. Mem."), 73 ("Wells Decl."), 74 ("Lechtzin Decl.")].  For the reasons set forth below, that motion is DENIED.

## I.    BACKGROUND[1]

### A.  The Complaint and the Parties

In 2022, Plaintiffs Ivan Kovalev and Mintiwab Hill filed a complaint against Defendant A.G. Consulting Engineering, P.C. ("AGC") seeking to recover alleged unpaid overtime wages [ECF No. 5 (the "Complaint" or "Compl.")].  The Complaint alleges, in conclusory fashion, that

---

[1] This section draws on the Complaint and declarations from Plaintiffs Kovalev and Hill [ECF No. 5 (the "Complaint" or "Compl."); ECF No. 59-3 ("Kovalev Decl."); ECF No. 59-5 ("Hill Decl.")].  As explained below, Plaintiffs filed the Kovalev and Hill declarations in support of a previous motion for conditional certification of a collective action, and not in support of the pending renewed motion for class certification and settlement approval.

AGC willfully misclassified Plaintiffs, and alleged similarly situated employees, as exempt from the FLSA and NYLL and, as a result, failed to properly compensate them for work in excess of 40 hours per week.  Compl. ¶¶ 31–39.  The Complaint asserts: (1) a claim for violation of the FLSA overtime requirement on behalf of Plaintiffs and a purported "FLSA Collective," Compl. ¶¶ 90–101 ("Count I"); (2) Kovalev's individual FLSA retaliation claim, Compl. ¶¶ 102–107 ("Count II"); (3) a claim for violation of the NYLL overtime requirement on behalf of Plaintiffs and a purported class," Compl. ¶¶ 108–117 ("Count III"); and (4) Kovalev's individual NYLL retaliation claim, Compl. ¶¶ 118–123 ("Count IV").

As noted above, according to the Complaint, AGC is an engineering firm that provides an "array of Mechanical/HVAC, Electrical, Plumbing ('MEP') services" and "Inspection Services," among other services.  Compl. ¶ 2.

### 1.  Kovalev

Kovalev was hired in 2019 "as an electrical inspector."  Compl. ¶ 40; *see* Kovalev Decl. ¶¶ 1, 2, 7.  According to Kovalev, he "was hired as an exempt employee."  Kovalev Decl. ¶ 3.  He was assigned to work on a project for the MTA, which "entailed the installation of conduits and wiring from electrical distribution rooms to power video display screens which were being mounted in [numerous] stations."  Compl. ¶ 41.

Initially, for the "survey phase of the Project," Kovalev "survey[ed] New York City subway stations for the locations of power sources which could be linked to the display screens."  Compl. ¶ 43.  Kovalev was responsible for "reviewing plans of stations, identifying power sources, taking pictures, and recording the information in daily reports." Compl. ¶ 43.

The Complaint alleges that, after approximately three months, Kovalev was "laid off" when the survey portion of the Project was completed.  Compl. ¶ 43.  Approximately two months later, still in 2019, Kovalev was "rehired" to for "the installation portion of the Project."  Compl. ¶ 44.

In this role, his "primary responsibility was to inspect [electrical] installation work done by other [MTA] contractors." Kovalev Decl. ¶ 7. Specifically, Kovalev "performed visual inspections of the conduit installation and compare[d] it to engineers' and architect's specifications." Kovalev Decl. ¶ 7. He also created "daily inspection reports" in which he reported "any deviations [he] found to the project supervisors." Kovalev Decl. ¶ 7. Kovalev attests that he "had no discretion or authority to suggest repairs or fixes," nor did he have "discretion to discipline, hire or terminate any employees." Kovalev Decl. ¶¶ 8, 9.

The Complaint alleges that "Defendant represented that Plaintiff was hired as a salaried employee, but he was actually paid on an hourly basis." Compl. ¶ 42. Kovalev avers that he "did not receive time-and-a-half for overtime hours." Kovalev Decl. ¶ 6. His paystubs reflect that, at least some weeks, he worked more than 40 hours, and he was paid regular wages (of between approximately $51 and $53 per hour) for the hours he worked [ECF No. 59-4].

According to the Complaint, after he was rehired, Kovalev "inquired with Defendant's human resources representative via email as to why he was not eligible to receive overtime pay" and "argued" that he did not fall within any exemption. Compl. ¶¶ 51, 52. The Complaint alleges that, at a meeting with the president AGC and other members of the management team, Kovalev was told that "unless he signed a letter agreeing that he was an exempt employee and not entitled to overtime pay, he would be immediately fired," and Kovalev "signed the letter and remained employed" by AGC. Compl. ¶ 53.

Kovalev left AGC in 2022. Kovalev Decl. ¶ 11.

**2. Hill**

Hill was hired in 2018 "as a MEP [mechanical, electrical and plumbing] superintendent." Hill Decl. ¶ 1; *accord* Compl. ¶ 56. Plaintiffs do not offer any explanation of the significance of

Hill's superintendent title.  Hill attests that, "[w]hen [she] was hired, [AGC] represented to [her] that [she] was an exempt employee."  Hill Decl. ¶ 3.

At an unspecified time, Hill "was assigned to work on a contract with the New York Department of Corrections Office of General Services," which contract "entailed performing various building maintenance and repair jobs at two state correctional facilities for women."  Hill Decl. ¶ 2; *accord* Compl. ¶ 57.  Hill's "primary responsibility was to inspect the work that contractors and work crews did on various mechanical, electrical and plumbing ('MEP') repair and maintenance jobs."  Hill Decl. ¶ 7.

Hill "performed visual inspections of the work and compared it to engineers' and architect's specifications."  Hill Decl. ¶ 7.  She also created "daily inspection reports" in which she "detailed the progress workers made on the jobs" and she "noted any deviations between the work done and the specifications."  Hill Decl. ¶ 7.  In addition to these responsibilities, Hill "often had to contact contractors and their workers when there were not sufficient prison staff to accompany them on their jobs."  Hill Decl. ¶ 10.  She also "spent time learning how to inspect jobs outside the MEP areas" as part of her "work duties."  Hill Decl. ¶ 10.

Despite her "superintendent" title, Hill attests that she "had no discretion or authority to suggest repairs or fixes to any deviations from specifications [she] discovered."  Hill Decl. ¶¶ 1, 8.  Furthermore, while she specifically attests to having some role in coordinating among the personnel involved in a project, *see* Hill Decl. ¶ 10, Hill asserts that she "had no authority or control over the employment of any other employees."  Hill Decl. ¶ 9.

Hill left AGC in 2021.  Hill Decl. ¶ 11.

**B. Procedural History**

After Plaintiffs filed the Complaint, AGC responded with an Answer [ECF No. 18].  The Court thereafter issued a Case Management Plan and Scheduling Order [ECF No. 21].  The Court

also issued an Order referring the parties to mediation [ECF No. 22].

Before the first mediation session, Plaintiffs filed a motion for conditional certification of a FLSA collective action [ECF Nos. 25–27].  At the parties' joint request, the Court extended the deadline for AGC to oppose that motion while the parties participated in the mediation [ECF Nos. 28, 29, 30].  With the assistance of the mediator, the parties reached an agreement to settle this case [ECF No. 31; *see* ECF No. 32].

The Court, which had understood, apparently incorrectly, that Plaintiffs' earlier motion for conditional certification of a collective action was mooted by the parties' agreement to settle the case, directed the parties to file their proposed settlement and a letter explaining why it is fair and reasonable pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) [ECF No. 32; *see* ECF 48].  Instead of filing a typical motion for *Cheeks* approval, however, Plaintiffs filed a motion for Rule 23 class certification and settlement approval [ECF Nos. 44–47].  AGC did not file an opposition, and, indeed, the parties' proposed settlement agreement purported to stipulate to class certification [ECF No. 47-1 ¶ 22].

The Court held a conference with the parties [ECF No. 55 ("Tr.")].  On the record at the conference, the Court denied without prejudice the motions for conditional certification of a FLSA collective action, class certification, and settlement approval.  The Court observed that the standard for "the initial provisional certification" of a collective action, simply "allowing [plaintiffs] to send out the notice" is "pretty liberal."  Tr. at 10:13–14; *see id.* at 11:24–12:3.  Yet, the Court explained, Plaintiffs' original motion was "not adequate" to meet that liberal standard.  Tr. at 8:19.  The Court observed that, in  connection with the original motion, "the plaintiff Hill [did not] even submit a declaration [describing] her job responsibilities," which precluded the Court from making a finding that there might exist other, similarly situated plaintiffs for purposes of a collective action.  Tr. at

6:24–7:2. The Court further expressed "serious doubts" that Plaintiffs could meet the requirements for class certification. Tr. at 10:9.

Plaintiffs later filed a renewed motion for conditional certification of a FLSA collection action [ECF No. 57], supported by declarations from Plaintiffs describing their respective job responsibilities [ECF Nos. 59-3 ("Kovalev Decl."), 59-5 ("Hill Decl.")] and attaching certain paystubs [ECF Nos. 59-4, 59-6]. AGC filed a letter stating that it did not oppose the renewed motion for conditional certification, but AGC "reserve[d]" the right to oppose collective and class certification if "the Court does not ultimately approve the underlying settlement agreement" [ECF No. 61]. The Court granted the unopposed motion for conditional certification, stressing the "modest" showing required merely to issue notices to potential opt-in plaintiffs [ECF No 62]. In pertinent part, the Court granted Plaintiffs leave to send notice and consent forms to "current and former 'field employees,'" who were paid on an hourly basis, worked in excess of 40 hours per week, and were not paid overtime [ECF No. 62].

Plaintiffs sent notice and consent forms "to 62 current and former field employees" [ECF No. 74 ("Lechtzin Decl.") ¶ 22]. Ten individuals consented to opt in to the collective action [ECF Nos. 66, 68, 69].

Plaintiffs thereafter filed a renewed, unopposed motion for class certification and approval of the parties' proposed settlement, which motion is now pending before the Court [ECF No. 71]. In support of that motion, Plaintiffs filed only: a memorandum of law [ECF No. 72 ("Pl. Mem.")]; a copy of the parties' proposed settlement agreement, which they executed in 2023, after the mediation, and later amended via an addendum executed in 2024, after the close of the FLSA collective action opt-in period [ECF No. 74-1 ("Proposed Settlement")]; and two declarations of counsel concerning attorneys' fees and requested service awards for Kovalev and Hill, among other matters [ECF Nos. 73 ("Wells Decl."), 74 ("Lechtzin Decl.")]. Plaintiffs did not supplement or

refile the declarations from Kovalev and Hill.  Plaintiffs declined to submit declarations from any of the opt-in plaintiffs, or any other evidence, in support of their argument for class certification under Rule 23.

### C. The Proposed Settlement

The parties' Proposed Settlement agreement defines the settlement class as "the Named Plaintiff [sic], all Opt-in Plaintiffs, and all current and former field employees who were employed by [AGC] between July 13, 2019, through the date of the [anticipated] Preliminary Approval" of the settlement agreement.  Proposed Settlement, Addendum at 1; *see also* Proposed Settlement § II.24(bb).  The Proposed Settlement agreement further states that there are "approximately sixty-two (62) members of the Settlement Class."  Proposed Settlement, Addendum at 1.[2]

The Proposed Settlement agreement provides that AGC will pay a total settlement amount of $230,000, encompassing all individual settlement payments, service awards for Kovalev and Hill, settlement administrator costs, and attorneys' fees and costs.  *See* Proposed Settlement § II.27(q); Pl. Mem. at 7.

The Proposed Settlement agreement further provides that a "Settlement Administrator" will send notice of the settlement to all "Settlement Class Members," who will have 60 days to submit claim forms.  Proposed Settlement § IV.39; *see* Pl. Mem. at 8.  Plaintiffs propose "two tiers of payments: (1) a $200 payment to all Settlement Class Members who return claim forms; and (2) a *pro rata* share based on overtime hours worked."  Pl. Mem. at 8; *see* Proposed Settlement § IV.42.  Under the Proposed Settlement, Kovalev and Hill will not be required to submit claim forms and will receive service awards of $5,000 and $3,000, respectively.  Proposed Settlement § V.49(a);

---

[2] The original version of the agreement had stated that there were approximately fifty-three members of the Settlement Class and that "Plaintiffs ha[d] relied on this number in agreeing to the Settlement."  Proposed Settlement § II.24(bb). Yet the total settlement amount did not change in light of the expansion of the purported class.  *See* Proposed Settlement § II.27(q); Proposed Settlement, Addendum at 1.

Proposed Settlement, Addendum at 1; Pl. Mem. at 10.  Plaintiffs' counsel will receive attorneys' fees in the amount of $76,659, one-third of the total settlement payment, plus costs.  Pl. Mem. at 10; *see* Proposed Settlement § V.50.

Under the Proposed Settlement, members of the Settlement Class who receive payments will release AGC from all wage and hour claims.  Proposed Settlement § III.27(b).  Kovalev and Hill, however, will be subject to a general release of "any and all claims under federal, state, and/or local law."  Proposed Settlement § III.27(a).

## II.    DISCUSSION

"Because FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the NYLL claims as a class action." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).  "In this hybrid class and collective action, plaintiffs claim that they worked overtime, they were legally entitled under state and federal law to overtime pay, and [AGC] denied them such payment." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020).  "The crux of the dispute is whether" AGC "improperly classified plaintiffs as exempt employees under Labor Department guidelines and parallel state law." *Id.*

To succeed on their motion for approval of the parties' proposed class and collective action settlement, Plaintiffs must first demonstrate compliance with each of the requirements of Rule 23 by a preponderance of the evidence. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).  If Plaintiffs satisfy the prerequisites for class certification, the Court must evaluate

whether the proposed "class action settlement is fair, reasonable and adequate" under Rule 23(e).[3]

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). Furthermore, because the parties propose to settle FLSA claims, the Court must assess whether the proposed settlement is fair and reasonable pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and its progeny. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015).

### A. Plaintiffs Fail To Satisfy Rule 23

Under Rule 23(a) of the Federal Rules of Civil Procedure, a Court may certify a proposed class only if the party moving for certification demonstrates that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Furthermore, the Second Circuit has held, "Rule 23 contains an implicit threshold . . . 'ascertainability' requirement," meaning the class must be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (internal citation omitted). If these threshold requirements are met, Plaintiffs must further demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Scott*, 954 F.3d at 512.

---

[3] Rule 23(e)(1) of the Federal Rules of Civil Procedure requires that before giving notice of the settlement agreement to class members the Court must find that it will likely be able to "approve the proposal under Rule 23(e)(2)" and "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). To merit this exceptional treatment, the moving party must "affirmatively demonstrate compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original); *see Johnson v. Nextel Commc'ns Inc.*, 780 F. 3d 128, 138 (2d Cir. 2015) (stressing the need for "evidentiary proof" of compliance with Rule 23). Put another way, "the requirements of Rule 23 must be met, not just supported by some evidence." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006).

Furthermore, the Court is obligated to conduct "a rigorous analysis" of the case for class certification. *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51. The Court retains this obligation even though the parties have reached a settlement agreement. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 33; *see In re American Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied"). Indeed, in the settlement context, the Court has a "heightened" responsibility "to protect" the absent members of a purported class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

Here, Plaintiffs have clearly failed to carry their burden to prove compliance with Rule 23. Indeed, Plaintiffs have scarcely attempted to offer "evidentiary proof" to support their pending motion. *Johnson*, 780 F. 3d at 138. As explained above, the Court denied Plaintiffs' original motion for *conditional* certification of a FLSA collection action in part because Plaintiffs had failed to submit the evidence required to make the minimum showing required. *See* Tr. at 6:24–7:2, 8:19. At the conference in connection with Plaintiffs' original motions, the Court warned Plaintiffs that

"generalized and conclusory" declarations would not be sufficient for Rule 23 class certification. *See* Tr. 6:9-18, 7:6-10. When Plaintiffs filed their renewed motion for conditional certification of a FLSA collection active, they submitted declarations and pay stubs for Kovalev and Hill [ECF Nos. 59-3, 59-4, 59-5, 59-6], as well as an excerpt of an employee handbook [ECF No. 59-7 ("Handbook")]. While the Court ruled that these submissions were sufficient for the "modest" showing required for conditional certification of a FLSA collection action [ECF No. 62], these documents are utterly inadequate "to prove" compliance with Rule 23. *Wal-Mart Stores, Inc.*, 564 U.S. 350; *Scott*, 954 F.3d at 520 ("the requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for 'similarly situated' employees to proceed in a [FLSA] collective action"). Aside from opt-in consent forms, which contain no information beyond a statement that the opt-in plaintiff worked "as an hourly employee" for a certain period [ECF Nos. 66, 68, 69], Plaintiffs have failed even to offer any additional proof of the existence of a definite class of misclassified employees, much less proof of compliance with the statutory requirements of Rule 23(a) and 23(b).

**1. The Proposed Class Is Not Sufficiently Definite.**

To make the required findings of numerosity, commonality, typicality, and adequacy, the Court must have "a clear sense" of the membership of the purported class. *In re Petrobras Sec.*, 862 F. 3d at 269. Here, Plaintiffs purport to define the settlement class as "the Named Plaintiff [sic], all Opt-in Plaintiffs, and all current and former field employees who were employed by [AGC] between July 13, 2019, through the date of the [anticipated] Preliminary Approval" of the Proposed Settlement agreement. Proposed Settlement, Addendum at 1. However, Plaintiffs fail to offer proof that the key term "field employees" establishes a class "with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 264. Indeed, Plaintiffs do not even attempt to define or clarify who counts as a field employee.

In employment matters, "a class is ascertainable where its members can be determined using objective documentation, such as Defendants' employment records." *Lawrence v. NYC Med. Prac., P.C.*, 2021 WL 2026229, at *12 (S.D.N.Y. May 20, 2021). Here, the only documentation in the record that uses the term "field employees" is the excerpt of the Handbook.[4] The excerpt that Plaintiffs submitted does not define "field employees," nor does any other document in the record. Notably, the Handbook does not purport to classify all field employees as exempt employees, as Kovalev and Hill attest they were classified. *See* Handbook at 37. Rather, the excerpt of the Handbook that Plaintiffs submitted merely reflects that field employees may have different hours and must submit time sheets on a different schedule from office employees. *See id.* at 38. The pay stubs Plaintiffs submitted for Kovalev and Hill do not identify them as "field employees" [ECF Nos. 59-4, 59-6].

Significantly, Hill does not identify herself as a former field employee in her declaration. Instead, she attests that she was "a MEP superintendent." Hill Decl. ¶ 1. Hill does not mention the term field employee, or any variation of that term, in her declaration.

Kovalev does not expressly identify himself as a former field employee in his declaration, but he does attest that he has "spoken" with "other [AGC] field inspectors who performed similar inspection work as [he] did." Kovalev Decl. ¶ 10; *see id.* ¶ 1 (defining his job as "an inspector" without reference to the term "field employee" or "field inspector"). Crucially, however, Kovalev does not attest in his declaration that *all* field inspectors performed similar work, and Plaintiffs have not submitted any other evidence to that effect. Furthermore, Plaintiffs offer no evidence or argument that all field employees were inspectors. Rather, in light of Plaintiffs' own allegations

---

[4] Plaintiffs did not submit the excerpt of the Handbook as an exhibit in support of the pending motion; rather, the Handbook is in the record because Plaintiffs submitted it in support of their earlier motion for conditional certification of a collective action.

that AGC provides an "array of Mechanical/HVAC, Electrical, Plumbing ('MEP') services, Fire Protection, Fire Engineering, LEED Consulting, [and] Construction Management," in addition to "Inspection Services," Compl. ¶ 2, it seems likely that some field employees may be, for example, site managers, mechanics, electricians, plumbers, and HVAC technicians, in contrast with "field inspectors," Kovalev Decl. ¶ 10.

As noted above, Plaintiffs seeking class certification have the burden to prove that they meet the requirements of Rule 23, including the threshold requirement of ascertainability.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 350–51; *In re Petrobras Sec.*, 862 F.3d at 264.  Compliance may not be "presumed."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  As such, the oblique references to "field employees," in the Handbook, and "field inspectors," in Kovalev's declaration, are not sufficient to establish, upon "rigorous analysis," that Plaintiffs have defined an objectively ascertainable settlement class with definite boundaries.  *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51; *In re Petrobras Sec.*, 862 F.3d at 264.

## 2.  The Proposed Class Does Not Meet the Requirements of Rule 23(a).

Plaintiffs' threshold failure to provide the Court with "a clear sense" of the membership of the purported class also precludes the Court from finding that Plaintiffs satisfy the requirements of Rule 23(a).  *In re Petrobras Sec.*, 862 F. 3d at 269.  In particular, Plaintiffs fail to establish that they meet the requirements of commonality and typicality.  As noted above, Rule 23(a) requires the Court to certify that "there are questions of law or fact common to the class" and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)–(3).  The commonality and typicality requirements "tend to merge."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350 n.5.

Here, as noted above, Plaintiffs' overtime claims turn on whether AGC misclassified them as exempt employees.  As the Second Circuit has explained in the context of affirming the denial

14

of a motion for class certification, the exemption inquiry "is a mixed question of law and fact," which requires "examination of the duties that the employee actually performs" and "evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) (internal brackets, quotation marks, and citations omitted); *see Scott*, 954 F.3d at 511. Plaintiffs fail to establish that the jobs of Hill, Kovalev, and the purported class were materially similar.

Specifically, as noted above, given the wide "array" of services AGC provides, Compl. ¶ 2, a purported class of "field employees" could include employees with materially different "duties that the employee[s] actually perform[,]" *Myers*, 624 F.3d at 549, different skills and types of training, different amounts of discretion and authority, and different hours. For example, Kovalev and Hill both attest in their declarations that they "had no discretion or authority to suggest repairs or fixes" to the projects they inspected. Kovalev Decl. ¶ 8; Hill Decl. ¶ 8. Other AGC field employees might have had such authority, however. Plaintiffs simply failed to offer any evidence on this point, and the Court has an obligation not to presume such evidence exists. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 160.

Moreover, the Court observes that Hill and Kovalev apparently had somewhat different duties from each other, which only underscores the possibility that other so-called field employees had were more differently situated. In particular, Hill was "a MEP superintendent," while Kovalev was an electrical inspector. Hill Decl. ¶ 1; Kovalev Decl. ¶ 1. Moreover, in describing her duties, Hill attests that she was responsible for "contact[ing] contractors and their workers when there were not sufficient prison staff to accompany them on their jobs." Hill Decl. ¶ 10. These details about Hill's duties suggest that, if Hill was field employee, some AGC field employees might have administrative responsibilities such that they might be properly classified as exempt employees. *See* 29 U.S.C § 213(a)(1) (exempting "administrative" employees).

15

Hill attests that "[w]hen [she] was hired, [AGC] represented to [her] that [she] was an exempt employee." Hill Decl. ¶ 3. Hill contends that she was misclassified. In support of that contention, Hill expressly testifies in her declaration that her "primary responsibility" was not administrative. Hill Decl. ¶ 7. If that testimony is true, any administrative responsibilities Hill had would not be a basis for classifying Hill as exempt. *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532 (2d Cir. 2009). However, the Court cannot simply assume that every other member of the purported class had the same balance of responsibilities. Plaintiffs failed to submit declarations from any of the opt-in plaintiffs or other evidence to demonstrate that field employees' responsibilities were not primarily administrative and did not meet other exemption criteria. As such, the Court cannot conclude that Plaintiffs satisfy the requirements of commonality and typicality for a purported class of misclassified employees when the minimal evidence that Plaintiffs have submitted itself underscores the possibility that class members' duties were not similar in ways material to exemption criteria. *See Myers*, 624 F.3d at 549.

The Court notes that Plaintiffs might be able to satisfy some of the Rule 23 requirements if the proposed class were limited to field inspectors, rather than field employees. However, it is far from clear that Hill would fall within that class, "using objective documentation," since she attests that she held a different title. *Lawrence*, 2021 WL 2026229, at *12; *see* Hill Decl. ¶ 1. It is likewise far from clear that Plaintiffs could satisfy the numerosity requirement of Rule 23(a) if they were to narrow their proposed class. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### 3. The Proposed Class Does Not Meet the Requirements of Rule 23(b).

The Court also concludes that Plaintiffs fail to satisfy the predominance requirement for class certification. Rule 23(b) requires that questions common to the class "predominate over any questions affecting only individual class members." Fed. R. Civ. P. 23(b)(3). As such, the Court

16

must assess whether answers to common questions "can be achieved through generalized proof" and whether those inquiries are "more substantial than the issues subject only to individualized proof." *Myers*, 624 F.3d at 547. To satisfy this requirement in a misclassification case, Plaintiffs must provide evidence "demonstrating that the job duties of putative class members were largely consistent across the class" to "show that the subsidiary questions involved in resolving exemption will be answerable through evidence generally applicable to the class." *Id.* (internal quotation marks and citation omitted). Plaintiffs have not done so.

### B. The Proposed Settlement Agreement Cannot Be Approved.

Because the proposed settlement class does not meet the requirements of Rule 23(a) and (b), the Court cannot grant preliminary approval pursuant to Rule 23(e)(1), and the Court need not evaluate the fairness of the settlement under either Rule 23(e)(2), or *Cheeks*. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997); *Myers*, 624 F.3d at 548.

As such, the Court will not perform those evaluations. The Court simply notes that, setting aside the class certification issues, the Proposed Settlement agreement does not pass muster under *Cheeks* in at least one important respect. Courts in this District routinely decline to approve FLSA settlements that release a defendant from liability untethered to the wage and hour claims at issue. *See Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015); *Alexander v. DRG Hosp. Grp., Inc.*, 2024 WL 4789401 (S.D.N.Y. Nov. 14, 2024); *Barsa v. Beacon Health Options, Inc.*, 2020 WL 7240346, at *7 (S.D.N.Y. July 10, 2020); *Gomes v. Coppola's of New York, Inc.*, 2019 WL 6211495, at *2 (S.D.N.Y. Nov. 21, 2019). Under the parties' Proposed Settlement agreement, both Kovalev and Hill release AGC from "any and all claims arising under federal, state, and/or local law," including claims "under the Age Discrimination Employment Act, Title VII of the Civil Rights Act, the Americans with Disabilities Act," and other statutes. Proposed Settlement § III.27(a). This release is obviously overbroad with respect to Hill, who asserts only

wage and hour claims, and may also be overbroad with respect to Kovalev, who asserts claims for retaliation under the FLSA and NYLL in addition to his wage and hour claims.

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification and for settlement approval [ECF No. 71] is DENIED.

The Clerk of Court respectfully is requested to terminate the motion pending at docket entry number 71.

The parties shall file a joint letter by September 2, 2025 advising the Court how they propose to proceed in this action.

**The parties are on notice that failure to comply with court orders and all applicable rules, and expeditiously to move this case toward resolution, may result in sanctions, including: monetary penalties on counsel and the parties themselves; preclusion of claims, defenses, evidence, and motion practice; and the case-terminating sanctions of dismissal for failure to prosecute and default judgment.**

**SO ORDERED.**

**Date:  August 25, 2025**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**