**Partners:**
Louis J. Capozzi, Jr., Esq. (PA, NJ, MD)
Daniel K. Natirboff, Esq.
Donald R. Reavey, Esq.
Craig I. Adler, Esq. (PA, NJ)
Mark K. Gyandoh, Esq. (PA, NJ)
Salomon V. Bagdadi, Esq. (FL)
James A. Maro, Esq. (PA, NJ)
James A. Wells, Esq.

**Of Counsel:**
Garrett H. Rothman, Esq.



**Associate Attorneys:**
Bruce G. Baron, Esq.
Brandon S. Williams, Esq.
Nicholas J. Luciano, Esq.
Dayton P. Broyan, Esq. (PA, OH)
Giulia T. Conboy, Esq.

**Paralegals:**
Karen L. Fisher, Senior Paralegal
Linda A. Gussler
Tina M. Scheetz

www.capozziadler.com
info@capozziadler.com

January 14, 2026

**VIA ECF**
The Honorable Mary Kay Vyskocil
United States District Court, S.D.N.Y.
40 Foley Square, Courtroom 906
New York, NY 10007

Re: **Kovalev et. al. v. A.G. Consulting Engineering P.C., No. 1:22-cv-05954-MKV**

Dear Judge Vyskocil,

  Counsel for Plaintiffs[1] and Defendants, AG Consulting Engineering ("AGC"), jointly request that the Court approve the Parties' settlement of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). As explained below, the parties respectfully submit that the Settlement is fair and reasonable. Consistent with the requirement that the Court approve the Settlement under the FLSA, attached hereto as Exhibit A is the fully executed Settlement Agreement between the parties.

  Plaintiffs filed this action on July 15, 2022, as a collective action under the FLSA and a Fed. R. Civ. P. 23 class action under the NYLL. Plaintiffs alleged they were paid hourly but did not receive time-and-a-half pay for hours worked more than 40 hours per week. Plaintiffs further alleged that their job-related duties were such that they did not meet the requirements for the administrative or professional exemptions under 29 C.F.R. § 541.200(a)(2) or (3). Defendant denies Plaintiffs' allegations and asserts multiple affirmative defenses, including that Plaintiffs failed to state a cause of action, which would preclude recovery under the FLSA or the NYLL. The parties engaged in written discovery and exchanged thousands of pages of documents.

  In early 2023, the parties engaged in three mediation sessions with a Court-appointed mediator and multiple meet-and-confer sessions, which resulted in an initial settlement agreement. On July 8, 2024, the Court granted Plaintiffs' Motion for Conditional Certification and to Facilitate Collective Action Notice (Dkt. No. 57). After notice was distributed, eight eligible former employees opted into the action. Plaintiffs filed a Motion for Preliminary Approval of the

---

[1] Plaintiffs Ivan Kovalev and Mintiwab Hill, ("Named Plaintiffs") and Darrin C. Cole, Christopher Forbes, Elba Hernandez, Ibrahim Halim Ghaly Ibrahim, Igor Machin, David Poitras, Erica Rodriguez and James Wademan ("Opt-In Plaintiffs") (or collectively "Plaintiffs").

Straight Line Title Services, LLC

| **Main Office** | **Real Estate & Title Co. Office** | **Philadelphia Office** | **Ft. Lauderdale Office** | **Miami Office** |
|---|---|---|---|---|
| 2933 North Front Street | 355 N. 21st Street, Suite 205 | 312 Old Lancaster Road | 3101 N. Federal Hwy., Suite 502 | 323 Sunny Isles, Blvd., Suite 504 |
| Harrisburg, PA 17110 | Camp Hill, PA 17011 | Merion Station, PA 19066 | Oakland Park, FL 33306 | Sunny Isles Beach, FL 33160 |
| Ph. (717) 233-4101 | Ph. (717) 234-3289 | Ph. (610) 890-0200 | Ph. (717) 234-3289 | Ph. (717) 233-4101 |
| Fax (717) 232-3080 | Fax (717) 234-1670 | Fax (717) 232-3080 | Fax (717) 234-1670 | Fax (717) 232-3080 |

The Honorable Mary Kay Vyskocil
January 14, 2026
Page 2

Settlement and Certification of a Settlement Class on December 16, 2024 (Dkt. No. 71), which the Court denied on August 25, 2025 (Dkt. No. 76).

The named and opt-in Plaintiffs then agreed to proceed on an individual basis. Plaintiffs' counsel continued to negotiate a settlement on behalf of the named and opt-in Plaintiffs with Defendant, which resulted in an agreement on January 2, 2026. The Parties agreed to a gross settlement amount of eighty-one thousand dollars ($81,000.00), which, as discussed below, will be allocated among the two named Plaintiffs and eight opt-in Plaintiffs proportionally to their estimated actual damages, after costs, and one-third allocated to attorneys' fees.

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Fed. R. Civ. P. 41 absent the approval of the district court or the [United States] Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). District courts in the Second Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable. *See Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-CV-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *3 (S.D.N.Y. Nov. 6, 2015). "Generally there is a strong presumption in favor of finding a settlement fair." *Sanchez v. DPC New York Inc.*, 381 F. Supp. 3d 245 (S.D.N.Y. 2019).

**The Settlements Satisfy the *Wolinsky* Factors**

Under *Wolinsky v. Scholastic, Inc.*, courts consider the following factors to assess whether a proposed settlement of an FLSA case is fair and reasonable:

> (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

The first *Wolinsky* factor examines the range of Plaintiffs' possible recovery. *Id.* Under the Settlement Agreement, Plaintiffs will receive substantial percentages of their maximum potential damages. Plaintiffs will receive between approximately 46% to 100% of their maximum potential damages. This is an excellent result compared with the percentages deemed satisfactory in other wage and hour settlements approved in this District. *See Matatia v. Kavouras Corp.*, 24-cv-7569, 2025 WL 1079201, at *2 (SDNY Apr. 8, 2025) (approving 83% recovery); *Santos v. YMY Mgmt. Corp.*, 20-cv-1992, 2021 WL 431451, at *2 (SDNY Feb. 8, 2021) (approving 18% recovery); *Zorn-Hill v. A2B Taxi LLC*, 19-cv-1058, 2020 WL 5578357, at *4 (SDNY Sept. 17, 2020) (approving

The Honorable Mary Kay Vyskocil
January 14, 2026
Page 3

12.5% recovery); *Gervacio v. ARJ Laundry Servs. Inc.*, 17-cv-9632, 2019 WL 330631, at *1 (SDNY Jan 25, 2019) (approving 20% recovery).

The table below sets forth the maximum potential recoveries for five Plaintiffs and the percentage of damages each will receive under the proposed Settlement:

| Plaintiff: | Actual Damages:[2] | Liquidated Damages:[3] | Amount awarded under Settlement Agreement: | Percentage of liquidated damages: |
|---|---|---|---|---|
| Kovalev | $30,287[4] | $45,574[5] | $28,558.20[6] | 63% |
| Hill | $10,265 | $20,530 | $9,558.20 | 46% |
| Manchin | $2,500 | $5,000 | $2,558.20 | 50% |
| Poitras | $2,500 | $5,000 | $2,558.20 | 50% |
| Wademan | $1,600 | $3,200 | $1,658.20 | 50% |

The remaining five Plaintiffs, Cole, Forbes, Hernandez, Ibrahim, and Rodriguez, all worked nominal amounts of overtime and are thus receiving $358.20 under the Settlement Agreement, which represents approximately 100% of their actual damages. *See* Exhibit A at ¶ 4.k. Each of these recoveries satisfies the first *Wolinsky* factor examining the range of Plaintiffs' possible recovery.

The second *Wolinsky* factor considers the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses. *See Wolinsky*, 900 F. Supp. 2d at 335. When the initial settlement was reached, the parties had not yet engaged in depositions. Plaintiffs originally noticed six depositions. After the denial of their first motion for settlement approval, Plaintiffs were prepared to proceed with the first three

---

[2] Actual damages are calculated by the number of overtime hours worked multiplied by one half a Plaintiff's hourly rate.
[3] Plaintiffs allege that Defendant acted willfully and in bad faith in violating the FLSA. Plaintiffs would argue that the facts underlying Kovalev's retaliation claim would also establish the factual predicates for willfulness and bad faith, thus permitting liquidated damages and the application of a three-year statute of limitations. *See* 29 U.S.C. § 255(a). Defendants deny Plaintiffs' allegations, but for purposes of settlement only, do not dispute Plaintiffs' allocation of damages.
[4] Kovalev's actual damages include $15,287 in back pay, and $15,000 for his retaliation claim. Plaintiffs assert that Kovalev had a very strong claim of retaliation. Under the FLSA, back pay is one of several categories of damages available for retaliation. *See* 29 U.S.C. § 216(b). For purposes of settlement allocation, Plaintiffs are using Kovalev's back pay damages as a guide to estimate damages for his retaliation claim.
[5] For this figure, only the back pay portion of Kovalev's total actual damages is liquidated.
[6] While drafting the Settlement Agreement, Plaintiffs over estimated their costs by $582. That amount will be added to each Plaintiffs' award, evenly, in the amount of $58.20. Thus, each Plaintiff will receive exactly $58.20 more than the amounts listed in the Settlement Agreement.

The Honorable Mary Kay Vyskocil
January 14, 2026
Page 4

depositions, including a Rule 30(b)(6) deposition. Defendant, in turn, would have sought to depose each settling Plaintiff. Settling the case at this time spares the Parties the expense of taking fact witness depositions; retaining experts and producing expert reports; conducting expert depositions; filing and opposing motions for summary judgment; filing and opposing pre-trial motions; preparing for and conducting a trial; and preparing potential post-trial motions and filings. The burden on the Parties to establish their respective claims and defenses through continued litigation would be substantial. By avoiding these expenses, this Settlement satisfies the second *Wolinsky* factor.

The third *Wolinsky* factor considers the seriousness of the litigation risks faced by the parties. *Id.* Here, the Parties faced substantial litigation risks. Defendant would have sought to prove that Plaintiffs were properly classified as exempt because they met the duties requirements for the professional or administrative exemptions under the FLSA and were not entitled to overtime pay. Defendant also would have sought to limit any damages by arguing it acted in good faith and that Plaintiffs could not prove it acted willfully. Conversely, Plaintiffs would have argued that because they were paid on an hourly basis and their weekly pay varied based on hours worked, they were not subject to any exemptions under the FLSA and were entitled to overtime compensation for all hours worked over 40 per week. Defendant's payroll records show they did not receive such overtime compensation. Likewise, Plaintiff Kovalev would have presented evidence that Defendant retaliated against him for complaining that he was not being paid correctly pursuant to the FLSA. A fact finder could plausibly rule in favor of either side on each of these factual issues. This illustrates the litigation risks faced by the Parties and satisfies the third *Wolinsky* factor.

The fourth *Wolinsky* Factor considers whether the settlement agreement is the product of arm's-length bargaining between experienced counsel. *Id*. Aside from this case, the Plaintiffs' and Defense counsel have no prior experience with each other. Both parties' counsel have extensive experience in wage and hour litigation. *See* Exhibit B, Lechtzin Decl. at ¶ 2, Ex. 1; Exhibit C, Wells Decl. at ¶¶ 3-4. Throughout this litigation, counsel for each side zealously represented their clients' interests. However, through court-mandated mediation sessions, multiple meet-and-confer sessions, and further settlement discussions, the Parties were able to reach a settlement of this *bona fide* dispute. *Wolinsky*, 900 F. Supp. 2d at 335. The long history of this case is further evidence that the Settlement is the product of an arm's-length bargaining process, thus satisfying the fourth *Wolinsky* factor.

The fifth *Wolinsky* Factor considers the possibility of fraud or collusion. *Id*. As discussed above, counsel for the Parties worked diligently at arm's length and zealously represented their clients' interests to come to fair and reasonable settlements. Counsel for each side have no relationships or interactions outside this case, nor do any of the Parties. Thus, there is no possibility of fraud or collusion in these settlements.

*Wolinsky* counsels against approving a settlement where it may have an impact on other individuals with similar potential claims. *See Wolinsky*, 900 F. Supp. 2d at 336. This is not a concern here. Plaintiffs initially brought this case as a collective and class action. After the Court conditionally approved an FLSA collective (Dkt. No. 62), notice of the case was sent to current and former employees, and several individuals opted in (Dkt Nos. 66-69). In the approximately year and a half since notice was issued, no other current or former employees have expressed interest in joining the case. Since the initial settlement class was denied (Dkt. No. 76), Plaintiffs' counsel has undertaken the representation of the opt-in Plaintiffs on an individual basis, and the Settlement covers each of those individuals. The chance of any other individual coming forward with similar claims is remote. However, the instant Settlement would not bar similar claims by other individuals. *See Zavala Artiga v. Griffin Organics, Inc.*, No. 16-cv-6613, 2021 WL 1997636, at *4 (S.D.N.Y. May 19, 2021) ("While there may be other individuals with similar potential claims against these defendants, the settlement and dismissal of Zavala Artiega's FLSA claims will not adversely impact other similarly situated employees, whose claims are not being released as part of this settlement.").

*Wolinsky* also cautions against approving settlements where the defendant has a history of non-compliance with the FLSA, or where the circumstances that gave rise to the claims could recur. *Wolinsky*, 900 F. Supp. 2d at 336. Neither situation is present here. Defendant does not have a history of wage and hour violations, nor has it been subject to enforcement actions. Moreover, since each Plaintiff and Opt-in Plaintiff is a former employee, there is no chance of these circumstances recurring. *See Zavala Artiga*, 2021 WL 1997636, at *4 ("given that the employment relationship between [plaintiff] and Defendants as ended, there is no likelihood that the circumstances that gave rise to this lawsuit will recur.").

The parties submit that the *Wolinsky* factors for approving these Settlements are satisfied, and that the factors that the factors *Wolinsky* identifies as problematic for approval are not present here.

**The Settlement's Releases are Narrowly Tailored**

Courts in the Second Circuit are wary of overly broad releases in wage and hour settlement agreements. The *Cheeks* court warned against releases that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage and hour issues." *Cheeks*, at 206; *see also Grullon v. Justin Pharmacy Inc.*, No. 20-CV-6122 (OTW), 2021 WL 76386, at *2 (S.D.N.Y. Jan. 8, 2021) ("The caselaw is clear, that 'any release provision must be limited to the claims at issue in this action.'"). With the exception of Plaintiff Kovalev,[7] the Settlement Agreement releases only the wage and hour claims brought in the Complaint; nothing more. *See* Exhibit A at ¶ 5-7.

---

[7] Plaintiff Kovalev is providing a general release of his retaliation claims under the FLSA and NYLL. *See* Exhibit A at ¶5.

Specifically, the Agreement releases claims for losses "resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages or other compensation against Defendant the accrued during their work with Defendant…" *Id.* With the exception of Plaintiff Kovalev, there is no general release language and no release of other unrelated employment causes of action. *See* Exhibit A at ¶ 5-7; *see also Illescas v. Four Green Fields LLC*, No. 20-CV-9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021) ("Plaintiff agreed to release Defendants from claims for unpaid wages and related damages under the FLSA, the NYLL and related regulations…. This release of claims is limited to the wage and hour issues asserted in this action …. Similar releases are routinely approved.").

### The Settlement Does Not Have Confidentiality or Non-Disparagement Provisions

Courts have denied approval of FLSA settlements that include confidentiality clauses because a settlement agreement under the FLSA is "a 'judicial document' subject to the presumption of access." *Wolinsky*, at 337; *see also Martinez v. Ragtime Foods of N.Y., Inc.,* No. 11-cv-1483, 2011 WL 5508972, at *1 (E.D.N.Y. Nov. 10, 2011) ("settlement agreements in FLSA cases are judicial documents to which a presumption of public access applies."). The Settlement Agreement here does not have a confidentiality provision that would impede approval. Likewise, the Settlement Agreement does not have a problematic non-disparagement clause. *See Cortes v. New Creators, Inc.*, No. 15 CIV. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (approving settlement where "Plaintiffs are not precluded from discussing the settlement of FLSA and NYLL claims").

### Attorneys' Fees and Costs

Plaintiffs' counsel request that the Court approve attorney's fees at one-third of the Settlement, twenty-seven thousand dollars ($27,000), which is a fraction of Counsels' lodestar.

Second Circuit courts employ either the lodestar method or percentage-of-recovery approach when evaluating attorney fees in FLSA settlements, often using one method with a cross-check from the other. Courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Cent. States Se. v. Merck–Medco*, 504 F.3d 229, 249 (2d Cir. 2007). The lodestar calculation requires establishing both reasonable hourly rates and reasonable hours expended and can be compared to the level of fees allotted using the percentage of recovery method. *Zhu v. Meo Japanese Grill & Sushi, Inc.*, No. 17 CV 3521 (CLP), 2021 WL 4592530, at *6 (E.D.N.Y. Oct. 6, 2021). If the percentage of the fund method yields fees higher than the lodestar, courts can apply a multiplier to determine reasonableness. *Id.*

Courts in this Circuit routinely find that fees representing one-third of the settlement amount are reasonable. *See Zavala Artiega v. Griffin Organics, Inc.*, No. 16 CIV. 6613 (AEK), 2021 WL 1997636, at *5 (S.D.N.Y. May 19, 2021) (awarding one-third of settlement amount in attorneys' fees); *Santos v. YMY Mgmt. Corp.*, No. 20 CIV. 1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (same); *Caceres v. Brentwood Farmers Market*, No. 20-cv-3476, 2021

WL 3276637 (E.D.N.Y. May 4, 2021) (same); *Garcia v. Cloister Apt. Corp.*, No. 16-cv-5542, 2019 WL 1382298, at *3 (S.D.N.Y. Mar. 27, 2019) (same); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) (same); *Reyes v. Buddha–Bar NYC*, 08-cv-02494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same).

Plaintiffs' counsel has extensive experience litigating wage and hour cases. *See* Exhibit B at ¶¶ 3-4; Exhibit C at ¶ 2, Ex 1. Plaintiffs' counsel's hourly rates are as follows: Eric Lechtzin $1,141, Liberato Verderame $950, James Wells $700. These hourly rates are reasonable given counsels' experience. Since prior to the case being filed in 2022, Plaintiffs' counsel has spent significant time investigating the case, drafting the Complaint, issuing discovery requests, reviewing documents produced by Defendant, calculating potential damages, preparing for and conducting multiple mediation sessions with a mediator, preparing for and conducting multiple meet and confer calls with Defendant, facilitating notice to potential collective members and tracking responses, communicating with clients, attending a hearing before the Court, and drafting and filing motions and letters with the Court. *See* Exhibit B at ¶¶ 3-14; Exhibit C at ¶ 6-20. Plaintiffs' counsel's combined lodestar is over $606,402, not including time related to recent settlement negotiations or filing this motion. *See* Exhibit B at ¶ 17; Exhibit C at ¶ 23.

Under the Settlement Agreement, Plaintiffs' counsel will receive $27,000. This is approximately 4.5% of their lodestar and represents a significant negative multiplier.[8] Courts routinely approve settlements when the proposed fees are far lower than the lodestar amount. *See Zavala Artiega*, 2021 WL 1997636, at *5 ("…it is clear that the fee award represents a small fraction of the lodestar figure counsel would submit. Accordingly, the fee award here- which represents one third of the total settlement amount- is fair and reasonable."); *Zhu*, 2021 WL 4592530, at *6 ("The requested fee amount does not even reach the lodestar amount. As such, the attorney's fee is reasonable in relation to the settlement amount."). In addition, Plaintiffs' Counsel took this case on a completely contingent basis, with no compensation through three and a half years of litigation and no guarantee of recovery or reimbursement of expenses. *See* Exhibit B at ¶ 18-20; Exhibit C at ¶ 26.

Plaintiffs' counsel also incurred total costs of approximately $7,318.48. The largest cost is for settlement administration, in the amount of $5,515.20, paid to Analytics Consulting, LLC, which includes providing notice to the proposed collective. *See* Exhibit B at ¶ 17. The total also includes Plaintiffs' counsel's litigation costs, such as filing fees, courier expenses, and travel expenses, for which Edelson Lechtzin incurred $904.08 and Capozzi Adler incurred $899.20. *See* Exhibit B at ¶ 17; Exhibit C at ¶ 24. These costs were reasonable and necessary for prosecuting the case. *Id.* Accordingly, Plaintiffs request that the Court approve their fees and costs.

For all of the reasons set forth above, the Parties respectfully request that the Court approve the Settlement Agreement and Plaintiffs' counsel's fees and costs. The Parties also request that the Court enter the proposed Stipulation and Order of Dismissal under Fed R. Civ. P. 41, submitted

---

[8] Plaintiffs' counsel can submit billing records in a supplemental filing if deemed necessary by the Court.

The Honorable Mary Kay Vyskocil
January 14, 2026
Page 8

with this letter, which stipulates that the Court retain jurisdiction over this matter for purposes of enforcing the Agreement, attached hereto as Exhibit D.

Respectfully submitted,

_____
James A Wells, Esq.
**Capozzi Adler, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (717) 585-7823
jayw@capozziadler.com


*/s/ Eric Lechtzin*
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
 Telephone: (215) 867-2399
elechtzin@edelson-law.com